UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

MELISSA TEMPEL,

      Plaintiff,

v.

SCHOOL DISTRICT OF WAUKESHA,

and

JAMES SEBERT,

      Defendants.

Case No. 23-CV

**Jury Trial Demanded**

---

## COMPLAINT

### PRELIMINARY STATEMENT

Melissa Tempel ("Ms. Tempel") brings this First Amendment action against the School District of Waukesha ("District") and Superintendent James Sebert ("Dr. Sebert") under 42 U.S.C. § 1983. Ms. Tempel spoke out as a private citizen, during her off-duty time, against the District's application of its Controversial Issues in the Classroom Policy ("Board Policy 2240") to students' singing of Miley Cyrus and Dolly Parton's song "Rainbowland" at Heyer Elementary School's 2023 concert.

Because of this protected speech, the District placed Ms. Tempel on administrative leave and conducted an "investigation" into her protected speech. Dr. Sebert adopted the findings of the investigation and recommended that the School District of Waukesha Board of Education ("Board") fire Ms. Tempel. The Board

1

accepted Dr. Sebert's recommendation and fired Ms. Tempel for engaging in protected speech. The District and Dr. Sebert thus violated Ms. Tempel's First Amendment free speech rights by retaliating against her for engaging in protected speech.

## PARTIES

1. Melissa Tempel is an adult resident of Milwaukee County, Wisconsin.

2. The School District of Waukesha is a public unified school district in Waukesha County, Wisconsin.

3. Dr. James Sebert is, and was at all times relevant to this lawsuit, the Superintendent of the School District of Waukesha. Sebert is being sued in his individual capacity. Dr. Sebert is an adult resident of Waukesha County, Wisconsin.

## JURISDICTION AND VENUE

4. This court has original jurisdiction over this action under 28 U.S.C. § 1331 because this case arises under 42 U.S.C. § 1983.

5. Venue is proper in this judicial district under 28 U.S.C. §§ 1391(b)(1) and (b)(2) because Defendants reside in this district and a substantial part of the events giving rise to this Complaint occurred in this district.

## FACTUAL ALLEGATIONS

6. Ms. Tempel is an author, public commentator, and educator.

7. Ms. Tempel began her employment with the District in 2018 and, prior to her termination on July 12, 2023, was employed by the District as a first-grade dual-language educator at Heyer Elementary School, within the District.

8. Ms. Tempel received outstanding performance reviews during her tenure at Heyer Elementary School and prior to the events described herein was never subject to disciplinary action.

9. The District has Board Policies, including a Controversial Issues in the Classroom Policy (Board Policy 2240), which states, in pertinent part:

> The Board believes that the consideration of controversial issues has a legitimate place in the instructional program of the District.
>
> Properly introduced and conducted, the consideration of such issues can help students learn to identify important issues, explore fully and fairly all sides of an issue, weigh carefully the values and factors involved, and develop techniques for formulating and evaluating positions.
>
> For purposes of this policy, a controversial issue is a topic
>
> A. on which opposing points of view have been promulgated by responsible opinion.
>
> B. Which may be the subject of intense public argument, disagreement or disapproval
>
> C. Which may have political, social or personal impacts on students and/or the community, and
>
> D. Which is likely to arouse both support and opposition in the community.
>
> The Board will permit the introduction of controversial issues when use in the instructional program:
>
> A. is related to the instructional goals of the course of study
>
> B. is appropriate for the age and maturity level of the students engaged in the discussion.
>
> C. does not tend to indoctrinate or persuade students to a particular point of view;

      D. encourages open-mindedness and is conducted in a spirit of scholarly inquiry;

      E. does not cause a substantial disruption in the school environment.

      F. does not create a hostile school environment.

10. In August 2021, Dr. Sebert announced that the Controversial Issues in the Classroom Policy (Board Policy 2240) would apply to ban Black Lives Matter, Blue Lives Matter, Thin Blue Line, anti-racist, and other materials. Teachers were asked to remove all such materials from their classrooms.

11. The District's application of Board Policy 2240 garnered press attention and was the subject of discussion at the September 15, 2021 Board meeting, which was open to the public.

12. Over the 2021-2022 school year, Board Policy 2240 was applied by the District to ban LGBTQ+ Pride flags, safe space signs and even displays of the District's own Nondiscrimination and Access to Equal Educational Opportunity Policy (Board Policy 2260). The policy was also applied to signs that stated, "This classroom is anti-racist" and "This school welcomes you."

13. Upon information and belief, the District did not consistently apply Board Policy 2240. For example, Gay-Straight Alliance locker signs were prohibited under Board Policy 2240, but "Students for Life" and "Thin Blue Line" signs were displayed in District common areas.

14. In July 2021, the District suspended diversity, equity and inclusion training for staff and suspended the work of the District's Equity Leadership Team.

15. On September 28, 2021, the press coverage continued regarding the District's application of Board Policy 2240 to certain signage. Since the District's decision to apply Board Policy 2240 to classroom and school signage, the District was in the press not less than 20 times in 2021 and 2022.

16. On September 30, 2021, a change.org petition was started calling on the School District of Waukesha to rescind signage bans and discriminatory restrictions and follow policies and procedures that demonstrate a commitment to equity. 4,590 signatures have been added to this petition as of the date of this filing.

17. On October 14, 2021, the press reported on attendance at the October Board meeting, including comments by 35 parents, relating to the District's decision to apply Board Policy 2240 to remove signs supporting LGBTQ+ students.

18. On October 27, 2021, 30 parents, students, teachers, and community members gathered to protest and deliver a letter to Dr. Sebert objecting to the application of Board Policy 2240 to remove pro-LGBTQ+ signs. The letter was signed by a parent/community group, the Alliance for Education in Waukesha ("Alliance") along with 200 students, parents, teachers, professional staff and community members.

19. The press also covered this October 27, 2021 gathering and documenting concerns of increased bullying and harassment directed toward LGBTQ+ students within the District.

20. Upon information and belief, in October 2021, the District failed to report at least one incident of harassment toward an LGBTQ+ student to the

5

Wisconsin Department of Public Instruction, as required. This incident was reported in a public blog, as well as by the media.

20. In November 2021, the press continued to cover the District's removal of safe space signs and LGBTQ+ Pride flags under Board Policy 2240, with students going on the record to say that the District's policies made students feels unwanted and scared.

22. In December 2021, the District suspended a teacher without pay for pinning a Pride flag in her classroom and refusing to take it down.

23. On January 7, 2022, the Alliance sent a Notification of Anticipated Actions & Statement of Remedial Intent to Dr. Sebert regarding the District's actions on equity, diversity, inclusion and fairness.

24. On March 25, 2022, the American Civil Liberties Union ("ACLU") submitted a public records request to the District regarding its application of Board Policy 2240, to determine whether the District was violating constitutional or other civils rights of students and teachers by creating a hostile work environment for some groups of students.

25. In June 2022, 54 teachers resigned from the District. Several of those teachers testified publicly at the June 2022 Board meeting that they were resigning because of the District's application of Board Policy 2240. Specifically, the District's removal of LGBTQ+ signage and the monitoring of teachers who taught about race and diversity in their own classrooms.

26. Parents also testified publicly at the June 2022 Board Meeting that they were removing their children from the District because of the school's lack of acceptance and respect.

27. In January 2023, the District updated the dress code policy to include the following prohibitions on speech: "...staff are not permitted to wear or display on their person any item (e.g. symbols, graphics, images, or text) while at work that may be considered political, controversial, or divisive, or which is likely to distract from student learning, disrupt the school environment, or cause disharmony in the workplace. This includes, but is not limited to, clothing and/or accessories, such as lanyards, masks, and pins/buttons."

28. On February 1, 2023, Dr. Sebert met with the Superintendent's advisory committee and advised that the updated dress code policy was intended to address rainbows and "Safe Space for All" buttons – specifically to prohibit them, pursuant to Board Policy 2240.

29. In early 2023, Heyer Elementary School planned to host a spring concert for kindergarten and first graders, in which students historically sing songs for their families and classmates.

30. The elementary school's music teacher traditionally selects the songs that the students will sing at the spring concert.

31. The music teacher selected the song "Rainbowland" by Miley Cyrus and Dolly Parton for the 2023 spring concert.

32. The music teacher notified Heyer Principal Mark Schneider of the teacher's selection of "Rainbowland" for the 2023 spring concert.

33. On March 21, 2023, the District advised the music teacher that the singing of "Rainbowland" by Miley Cyrus and Dolly Parton at the 2023 Heyer spring concert was prohibited.

34. On March 21, 2023, Ms. Tempel received an email from the music teacher advising her that the District would not allow "Rainbowland" to be performed at the 2023 Heyer spring concert.

35. Ms. Tempel has a personal account on the social media platform X, formerly known as Twitter, (hereinafter "Twitter") with the handle @melissatempel.

36. Ms. Tempel's Twitter account is public—that is, anyone can view and interact with her tweets.

37. Ms. Tempel did not have any social media accounts, including Twitter, in her capacity as a District employee.

38. While she was employed by the District, Ms. Tempel did not use her Twitter account, or any other social media, in the course of her official duties as a District employee.

39. At all relevant times, Ms. Tempel used her Twitter account only to speak as a private citizen.

40. On March 21, 2023, at 6:39 p.m. CT, Ms. Tempel tweeted the following (hereinafter "the tweet"):



41. In the subsequent days, the tweet gained national attention with news outlets across the country reporting about the District's decision to prohibit the singing of "Rainbowland" by Miley Cyrus and Dolly Parton at the 2023 spring concert.

42. On March 24, 2023, the District issued a public statement to the media, advising that the Principal of Heyer Elementary School and a central office administrator had reviewed the song alongside Board Policy 2240. The statement explained that the Principal and the central office administrator determined that "Rainbowland" could be deemed controversial in accordance with Board Policy 2240.

9

43. The District did not hold classes during its spring break from March 27 2023, through March 31, 2023.

44. Between March 22, 2023, and March 31, 2023, news outlets interviewed Ms. Tempel during her off-duty time about the District's decision regarding "Rainbowland," the application of Board Policy 2240, and other related issues.

45. During these interviews, which were conducted off District premises and during personal time, Ms. Tempel spoke as a private citizen.

46. Between March 22, 2023, and March 31, 2023, news outlets also interviewed parents, community members, and Alliance for Waukesha members regarding the District's decision regarding "Rainbowland," the application of Board Policy 2240, and other related issues.

47. On March 31, 2023, Dr. Sebert and Board President Kelly Piacsek issued a statement to School District of Waukesha "Stakeholders" again advising that the Principal of Heyer Elementary and a central office administrator reviewed "Rainbowland" relative to Board Policy 2240 and determined it would be prohibited. The statement also announced that the matter should have been handled differently by Ms. Tempel and that steps were being taken to address how Ms. Tempel had chosen to address Heyer Elementary's prohibition of "Rainbowland" during the spring 2023 concert.

48. Ms. Tempel attempted to return to work after spring break on April 3, 2023.

49. On the morning of April 3, 2023, Heyer Elementary Principal Mark Schneider, School Board Member Anthony Zenobia, Assistant Superintendent Joe Koch, and Assistant Superintendent Sharon Thiede, met Ms. Tempel at the door and escorted her to the Principal's office. Sharon Thiede informed Ms. Tempel that the District was placing her on administrative leave effective immediately.

50. The District also called law enforcement to meet Ms. Tempel at the doors of the building, despite the fact that she had neither been accused or suspected of criminal or disorderly conduct, nor had she engaged in activity from which a reasonable District administrator could believe that she posed the potential for engaging in criminal or disorderly conduct.

51. Instead, the District called law enforcement to Heyer Elementary in order to intimidate Ms. Tempel for her past exercise of protected speech and to suppress further such speech on her part.

52. The press reported on Ms. Tempel's administrative leave, which also garnered national attention.

53. On April 12, 2023, dozens of individuals attended a Board meeting to weigh in on the District's decision regarding "Rainbowland." The press covered the Board meeting, as well as the rally and sing-a-long held in support of Ms. Tempel.

54. On April 12, 2023, Wisconsin State Superintendent of Public Instruction, Jill Underly weighed in on the District's decision and sent a letter to the District stating, in part:

> As district leaders, you can choose to reevaluate the use of the controversial issues policy. Instead of

11

> eliminating conversation on topics that you have in the past deemed controversial, the district can instead choose to foster inclusive environments where staff, students, and families are able to "identify important issues, explore fully and fairly all sides of an issue, weigh carefully the values and factors involved, and develop techniques for formulating and evaluating positions." Doing this will send a clear message to the residents of Waukesha and all of Wisconsin about the high priority you place on ensuring a well-rounded education for your students that reflects the pluralistic nature of our society.

55. On March 29, 2023, Miley Cyrus' foundation—the Happy Hippie Foundation—also took notice and tweeted about the "Rainbowland" matter.

56. After Ms. Tempel was placed on administrative leave, Dr. Sebert directed the District's Assistant Superintendent of Human Resources Sharon Thiede ("Ms. Thiede") to investigate Ms. Tempel's private, off-duty speech on social media and with news outlets.

57. Upon information and belief, Ms. Thiede conducted her investigation between April 3, 2023, and May 10, 2023.

58. Ms. Thiede interviewed Ms. Tempel, during which Ms. Tempel confirmed that all of her speech occurred off-duty and that it was rooted in her belief that the District's decision regarding "Rainbowland," and the application of Board Policy 2240, was a matter of public concern.

59. In a memo dated May 10, 2023, to Dr. Sebert, Ms. Thiede concluded that Ms. Tempel violated Page 7 of the Employee Handbook for Professional Staff Members, Board Policy 3170, Board Policy 3213, Board Policy 3310.

60. In a letter dated May 15, 2023, to Ms. Tempel, following his receipt of Ms. Thiede's report, Dr. Sebert wrote:

> After careful consideration of the evidence, I have adopted the findings and conclusions of the investigation report, which is attached for your reference. As stated in the report, you were entitled to disagree with the decision of the District related to the use of the song "Rainbowland" at the Heyer concert. However, the manner in which you chose to express your disagreement with the District's decision was inappropriate, disruptive, and in violation of various District policies. You failed to raise your concerns through the appropriate channels and instead took your concerns public in a manner intended to bring as much attention to the District's decision as possible, which resulted in substantial disruption to the school environment. Specifically, your actions violated the following District policies:
>
> - Page 7 of the Employee Handbook for Professional Staff Members
> - Board Policy 3179: Employee Concerns
> - Board Policy 3213: Student Supervision and Welfare
> - Board Policy 3310: Employee Expressions in Non-Instructional Settings
>
> In addition to being in violation of the above, you have significantly undermined the interests of your employer, the School District of Waukesha. You did so deliberately and repeatedly in this instance beginning on March 21, 2023. Such intentional misconduct, and the impact it had on the District, cannot be tolerated.

61. Dr. Sebert wrote that he would "be recommending to the Board of Education that [Ms. Tempel's] employment with the School District of Waukesha be terminated."

62. Ms. Tempel requested a hearing to petition the Board to reject Dr. Sebert's recommendation and maintain her employment with the District.

63. On July 12, 2023, the Board held a hearing on Dr. Sebert's recommendation to fire Ms. Tempel.

64. The Board voted unanimously to adopt Dr. Sebert's recommendation and fire Ms. Tempel effective July 12, 2023.

65. The District's conduct alleged herein was malicious or in reckless disregard of Ms. Tempel's First Amendment right to freedom of speech.

66. Dr. Sebert's conduct alleged herein was malicious or in reckless disregard of Ms. Tempel's First Amendment right to freedom of speech.

13

67. Ms. Tempel has suffered, and continues to suffer, financial loss and emotional distress as a result of the District's conduct alleged herein.

68. Ms. Tempel has suffered, and continues to suffer, financial loss and emotional distress as a result of Dr. Sebert's conduct alleged herein.

## FIRST CAUSE OF ACTION
### 42 U.S.C. § 1983: FIRST AMENDMENT RETALIATION

69. Ms. Tempel alleges and incorporates by reference the allegations in the preceding paragraphs.

70. The First Amendment, incorporated through the Fourteenth Amendment, protects public employees from retaliation in the workplace when they speak as a private citizen on matters of public concern and their free speech interests outweigh the government employer's interests in promoting the efficiency of the public services it performs through its employees.

71. There is a demonstrated public interest in the District's application of Board Policy 2240 dating back to at least the 2021-2022 school year.

72. The District's application of Board Policy 2240 is a matter of public concern.

73. Ms. Tempel spoke as a private citizen about a matter of public concern when she posted on social media and spoke to news outlets about the District's decision regarding "Rainbowland," the District's application of Board Policy 2240, and related issues.

74. Ms. Tempel did not speak pursuant to her official duties as a first-grade dual-language educator when she posted on social media and spoke to news

outlets about the District's decision regarding "Rainbowland," the District's application of Board Policy 2240, and related issues.

75. Ms. Tempel's free speech interests outweigh any interests the District has in promoting the efficiency of the public services it performs through its employees.

76. Nonetheless, Dr. Sebert adopted the findings of the investigative report and recommended that the Board fire Ms. Tempel because she posted on social media and spoke to news outlets about the District's decision regarding "Rainbowland," the District's application of Board Policy 2240, and related issues.

77. Dr. Sebert's conduct alleged herein is likely to deter a person of ordinary firmness from continuing to engage in protected speech.

78. Dr. Sebert thus violated Ms. Tempel's First Amendment right to freedom of speech.

79. The Board fired Ms. Tempel because she posted on social media and spoke to news outlets about the District's decision regarding "Rainbowland," the District's application of Board Policy 2240, and related issues.

80. The Board has final policymaking authority with respect to the District. Wis. Stat. § 120.44(2); *Gernetzke v. Kenosha Unified Sch. Dist. No. 1*, 274 F.3d 464, 469 (7th Cir. 2001).

81. The District's conduct alleged herein is likely deter a person of ordinary firmness from continuing to engage in protected speech.

15

82. The District thus violated Ms. Tempel's First Amendment right to freedom of speech.

## JURY TRIAL DEMANDED

83. Ms. Tempel hereby demands a trial by jury pursuant to Fed.R.Civ.P. 38.

## REQUEST FOR RELIEF

Ms. Tempel requests the Court award the following relief:

A. Judgment against the School District of Waukesha and James Sebert;

B. An order declaring that the School District of Waukesha and James Sebert violated Ms. Tempel's right to freedom of speech under the First Amendment;

C. An order reinstating Ms. Tempel to her position or, in the alternative, awarding front pay damages;

D. An award of compensatory damages or, in the alternative, nominal damages;

E. An award of punitive damages;

F. An award of costs and attorneys' fees incurred in the prosecution of this action; and

G. Any further relief the Court deems just and equitable.

Dated: September 5, 2023.

                        Respectfully submitted,

                        **HAWKS QUINDEL S.C.**

                        s/ *Summer H. Murshid*
                        Summer H. Murshid, State Bar No. 1075404
                        Martha L. Burke, State Bar No 1121510
                        Connor J. Clegg, State Bar No. 1118534

                        5150 North Port Washington Road, Suite 243
                        Milwaukee, WI 53217
                        Telephone: (414) 271-8650
                        Fax: (414) 207-6079
                        E-mail: smurshid@hq-law.com
                                      mburke@hq-law.com
                                      cclegg@hq-law.com

                        Attorneys for Plaintiff