**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF WISCONSIN**

MELISSA TEMPEL,

              Plaintiff,                              Case No.: 2:23-CV-01169

   v.

SCHOOL DISTRICT OF WAUKESHA,

and

JAMES SEBERT,

              Defendants.

## DEFENDANTS' BRIEF IN SUPPORT OF
## MOTION TO DISMISS PLAINTIFF'S COMPLAINT

### <u>PREFACE</u>

The decision by a local grade school not to use the song Rainbowland by Miley Cyrus and Dolly Parton in its annual spring concert is not a matter of public concern. So when a teacher at said local grade school takes to social media to air her personal grievance regarding a decision made by her school administration, she is not engaging in constitutionally protected speech. Furthermore, said teacher is not speaking as a private citizen when she uses the Twitter handle "Maestra (Teacher) Melissa"; makes reference to "My first graders," "our spring concert", and the decision by "our administration"; and includes "@waukeshaschools" in the post.

When her reckless and irresponsible conduct leads to disruptions to the educational environment of every student in the school district, including threatening phone calls and emails requiring a police presence at the school, said teacher is subject to disciplinary action. And that justifiable discipline does not amount to First Amendment retaliation.

Melissa Tempel fancies herself a First Amendment warrior. She is not. She took to social media to air a personal grievance she had with her school administration. That's it. Nothing in the Complaint asserts anything different. As such, her Complaint alleging First Amendment retaliation must be dismissed in its entirety and with prejudice.

## <u>INTRODUCTION</u>

Plaintiff Melissa Tempel claims her First Amendment rights have been violated, but her Complaint fails to state a claim upon which relief may be granted. Her Complaint contains a mere conclusory allegation her First Amendment rights have been violated but lacks sufficient factual support for three reasons. First, she fails to plead sufficient facts to support her conclusion she was speaking as a private citizen in a post on Twitter where (a) her Twitter handle is "Maestra" (Teacher);(b) she references "my first graders", "our spring concert", and "our administration"; and (c) she identifies her employer Waukesha School District. Second, Plaintiff fails to plead sufficient facts to support her conclusion she was speaking on a matter of public concern wherein the issue addresses a classic personal grievance with her employer over the music selection for a grade school concert. Third, she fails to plead her interest in speaking outweighs the School District of Waukesha's ("the District") interest in efficient and effective provision of educational services wherein the District experienced substantial disruption and safety threats in response to Plaintiff's speech.

Further, Plaintiff has failed to state a claim upon which relief can be granted against Dr. James Sebert in his individual capacity for four reasons. First, she cannot allege Dr. Sebert, in his individual capacity, acted under the color of state law. Second, she has not pled a causal connection between Dr. Sebert as an individual, and the official termination decision that was taken by the Board. Third, she has not pled a proper First Amendment retaliation claim. Finally,

2

in any event, Superintendent Dr. Sebert is entitled to qualified immunity. Therefore, Plaintiff's Complaint fails and must be dismissed in its entirety as to both the District and Dr. Sebert.

## FACTUAL BACKGROUND

Plaintiff was a first grade teacher with the School District of Waukesha beginning in 2018 until her termination on July 12, 2023. [Dkt. #1, ¶ 7]. In early 2023, Heyer Elementary School, where Plaintiff was a teacher, planned to host a spring concert for kindergarten and first graders. [Dkt. #1, ¶ 29]. The elementary school's music teacher selected the song "Rainbowland" by Miley Cyrus and Dolly Parton to be performed at the concert. [Dkt. #1, ¶ 31]. The music teacher notified Heyer Principal Mark Schneider of the song selection, and thereafter the District notified the music teacher "Rainbowland" would not be permitted to be performed. [Dkt. #1, ¶ 32 -33].

On March 21, 2023, Ms. Tempel learned of the District's decision regarding "Rainbowland". [Dkt. #1, ¶ 34]. On March 21, 2023, Plaintiff tweeted the following:

> My first graders were so excited to sing Rainbowland for our spring concert but it has been vetoed by our administration. When will it end? @waukeshaschools @DollyParton @MileyCyrus @mileyworld @gsafewi @CivilRights #publicschools

[Dkt. #1, ¶ 40]. In the subsequent days, the tweet gained national attention with news outlets across the country. [Dkt. #1, ¶ 41]. Plaintiff was interviewed by news outlets about the District's decision regarding "Rainbowland." [Dkt. #1, ¶ 44]. She also alleges she spoke out against the District's application of Board Policy 2240 Controversial Issues in the Classroom Policy. [Dkt. #1, ¶ 44].

On April 3, 2023, the District placed Plaintiff on administrative leave. [Dkt. #1, ¶ 49]. Following her investigation, in a memo dated May 10, 2023, Assistant Superintendent of Human Resources Sharon Thiede concluded Plaintiff had violated Page 7 of the Employee Handbook for

3

Professional Staff Members, Board Policy 3170 ["Employee Concerns"], Board Policy 3213 ["Student Supervision and Welfare"], and Board Policy 3310 ["Employee Expression in Noninstructional Settings"]. [Dkt. #1, ¶ 59].

Superintendent Dr. James Sebert adopted Ms. Thiede's findings and conclusions of the investigation report. [Dkt. #1, ¶ 60]. He informed Plaintiff she was "entitled to disagree with the decision of the District related to the use of the song 'Rainbowland' at the Heyer concert. However, the manner in which you chose to express your disagreement with the District's decision was inappropriate, disruptive, and in violation of various District policies." [Dkt. #1, ¶ 60]. He further stated, "You failed to raise your concerns through the appropriate channels and instead took your concerns public in a manner intended to bring as much attention to the District's decision as possible, which resulted in substantial disruption to the school environment." [Dkt. #1, ¶ 60]. Additionally, Dr. Sebert stated "you have significantly undermined the interests of your employer . . . You did so deliberately and repeatedly in this instance beginning on March 21, 2023. Such intentional misconduct, and the impact it had on the District, cannot be tolerated." [Dkt. #1, ¶ 60].

Following a hearing, the Board of Education voted unanimously to terminate Plaintiff's employment based on her violations of Board policies. [Dkt. #1, ¶ 62 – 64].

Plaintiff has now filed this lawsuit, alleging Dr. Sebert and the District violated Plaintiff's First Amendment right to freedom of speech. [Dkt. #1, ¶ 78, 82].

## **LEGAL STANDARD**

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a complaint by arguing it fails to state a claim upon which relief may be granted. *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736 (7th Cir. 2014). "To survive a motion to dismiss under Rule

4

12(b)(6), a plaintiff must state enough facts that, when accepted as true, 'state a claim for relief that is plausible on its face.'" *Spierer v. Rossman*, 798 F.3d 502, 510 (7th Cir. 2015) (*citing Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Although all reasonable inferences are to be drawn in favor of the plaintiff, the complaint must set forth factual allegations sufficient to establish the elements that are crucial to recovery under plaintiff's claim. *Sutliff, Inc. v. Donovan Cos., Inc.*, 727 F.2d 648, 654 (7th Cir.1984). In ruling on a motion to dismiss, "courts must take all of the factual allegations in the complaint as true," but "are not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555 (internal quotation marks omitted); *Wood v. Moss*, 572 U.S. 744, 764, n.5 (2014); *Jackson*, 711 F.3d at 794. Therefore, a court need not credit a plaintiff's conclusory assertions for purposes of a motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009); *Jackson*, 711 F.3d at 794.

To state a viable legal claim, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint is not sufficient "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*citing Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). Further, "[w]here a complaint pleads facts that are 'merely consistent with' a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id*. In addition, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555). "Surviving a Rule 12(b)(6) motion requires more than labels and conclusions" and the allegations "must be enough to raise a right to relief above the speculative level". *Pugh v.*

*Tribune Co.*, 521 F.3d 686, 699 (7th Cir. 2008). "[I]t demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal,* 556 U.S. at 678.

In ruling on a 12(b)(6) motion to dismiss, the court generally considers only those facts alleged within the four corners of the complaint. See Fed. R. Civ. P. 12(d). However, on a motion to dismiss, the court may also consider "documents that are central to the complaint and are referred to in it." *Williamson v. Curran,* 714 F.3d 432 , 436 (7th Cir. 2013) (citing *Geinosky v. City of Chi.*, 675 F.3d 743 , 745 n.1 (7th Cir. 2012)).

## <u>ARGUMENT</u>

**I.   PLAINTIFF'S FIRST AMENDMENT RETALIATION CLAIM MUST BE DISMISSED BECAUSE IT FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED.**

To establish a prima facie claim for First Amendment retaliation, a plaintiff must allege three elements: (1) she engaged in an activity protected by the First Amendment; (2) she suffered a deprivation that would likely deter First Amendment activity in the future; and (3) there exists a causal connection between the constitutionally protected conduct and the retaliatory action. *Watkins v. Kasper*, 599 F.3d 791, 794 (7th Cir. 2010). "Although making a 'prima facie case' is an evidentiary requirement and not a pleading standard, ... this requirement lends guidance to the Court's determination whether [a plaintiff] ha[s] sufficiently alleged [her] First Amendment retaliation claim ...." *Sroga v. Preckwinkle*, No. 14 C 06594, 2017 BL 20574, at *4 (N.D. Ill. Jan. 24, 2017). Failure to plead any element of the inquiry will prove fatal to the claim. In this case, Plaintiff has failed to plead sufficient facts to support her conclusory allegations she engaged in an activity protected by the First Amendment.

6

**A.    Plaintiff has not Pled Sufficient Facts to Support her Conclusory Allegation She Engaged in an Activity Protected by the First Amendment.**

It is well established a citizen who accepts public employment "must accept certain limitations on his or her freedom." *Garcetti v. Ceballos*, 547 U.S. 410 , 418 , 126 S. Ct. 1951 , 164 L. Ed. 2d 689 (2006); *Pickering v. Board of Educ*., 391 U.S. 563, 568, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968). Government employers enjoy considerable discretion to manage their operations, and the First Amendment "does not require a public office to be run as a roundtable for employee complaints over internal office affairs." *Connick v. Myers*, 461 U.S. 138 , 149 , 103 S. Ct. 1684 , 75 L. Ed. 2d 708 (1983). A public employee's speech is constitutionally protected by the First Amendment "only when [s]he speaks 'as a citizen' on matters of public concern." *Roake v. Forest Preserve District of Cook County*, 849 F.3d 342, 346 (7th Cir. 2017). If she speaks "pursuant to [her] official duties," *id*. (alteration omitted), or simply out of "pure personal interest," *Kristofek v. Village of Orland Hills*, 832 F.3d 785 , 794 (7th Cir. 2016), the speech is not protected. Further, the government is entitled to restrict speech, even if it addresses a matter of public concern, if "the interest of the employee as a citizen in commenting on the matter is outweighed by the interest of the governmental employer in promoting effective and efficient public service." *McGreal v. Ostrov,* 368 F.3d 657, 675-76 (7th Cir. 2004).

Thus, for Plaintiff to plead protection under the First Amendment, she must plead sufficient facts to support an allegation the speech (1) is made as a private citizen, (2) addresses a matter of public concern and (3) her interest in speech does not outweigh the state's interest as an employer in "promoting effective and efficient public service." *Houskins v. Sheahan*, 549 F.3d 480, 490 (7th Cir. 2008). Here, Plaintiff has failed to plead sufficient facts to support her conclusory allegation her speech is constitutionally protected.

**1. The facts pled in the Complaint fail to show Plaintiff's comments were made as a private citizen.**

In order for Plaintiff's speech to be protected by the First Amendment, Plaintiff must plead sufficient facts to show her comments were made in her capacity as a private citizen, and not within the scope of her employment. *Garcetti v. Ceballos*, 547 U.S. 410 , 419 , 126 S. Ct. 1951 , 164 L. Ed. 2d 689 (2006). The *Garcetti* Court recognized the need for public employers to have discretion in controlling their operations:

> Employers have heightened interests in controlling speech made by an employee in his or her professional capacity. Official communications have official consequences, creating a need for substantive consistency and clarity. Supervisors must ensure that their employees' official communications are accurate, demonstrate sound judgment, and promote the employer's mission.

*Id.* at 422-23. Public employee speech "ordinarily within the scope of [the] employee's duties" is therefore not afforded First Amendment protection. *Lane v. Franks*, 573 U.S. 228 , 134 S. Ct. 2369 , 2379 , 189 L. Ed. 2d 312 (2014).

In this case, Plaintiff's Complaint fails because the factual allegations are insufficient to show her speech was in her capacity as a citizen. Plaintiff alleges a legal conclusion she used her Twitter account "only to speak as a private citizen." [Dkt. #1, ¶ 39]. However, the court is not bound to accept as true such a legal conclusion couched as a factual allegation. *Twombly*, 550 U.S. at 555. Plaintiff asserts her Twitter handle is @melissatempel, and she provides a screenshot of her March 21, 2023 Tweet. [Dkt. #1, ¶ 35, 40]. Strikingly, however, Plaintiff has omitted her username from the Complaint allegations—"Maestra Melissa", i.e. "Teacher". On this motion to dismiss, the court may consider documents that are central to the complaint and are referred to in it, and therefore may consider the entirety of the Tweet in question, including her username. The full Tweet, including her username, reads as follows:

8



Based upon the username and the text of the Tweet, Plaintiff's Complaint allegations show she is speaking not as a private citizen, but in her capacity as a teacher for the Waukesha School District. Her Twitter name is "Maestra" i.e. "Teacher." She refers to "my first graders" and she tags and identifies her employer—the Waukesha School District @waukeshaschools. [Dkt. #1, ¶ 40]. She wants to make it clear to everyone who views the post she has "insider information" because she is a teacher in the District and this decision impacted her students. She says "My first graders," "our spring concert" and "vetoed by our administration." Thus, the speech reflects she is speaking as a teacher-employee of the Waukesha School District. As such, she has failed to plead facts sufficient to support her conclusory allegation she is speaking as a private citizen. Therefore, her Complaint fails on this first element.

9

**2.** **The facts pled in the Complaint fail to show Plaintiff's comments were made on a matter of public concern.**

Plaintiff has also failed to plead sufficient facts to support her conclusory allegation her comments were made on a matter of public concern, and not just a personal complaint about her employment, which is not constitutionally protected. In *Connick v. Myers*, 461 U.S. 138, 147, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983), the Supreme Court established that if a public employee speaks "upon matters only of personal interest," the expression of that speech and any alleged retaliation against the speaker is not a matter appropriately reviewed by federal courts. *Id.,* see also *Marshall v. Allen*, 984 F.2d 787, 795 (7th Cir.1993). Thus, if the speech at issue merely implicates a "purely personal grievance," the First Amendment does not apply and the court's analysis comes to an end. *Sullivan v. Ramirez,* 360 F.3d 692, 699 (7th Cir. 2004). As such, "[p]ersonal grievances, complaints about conditions of employment, or expressions about other matters of personal interest" do not constitute speech about matters of public concern that are protected by the First Amendment, but are matters more immediately concerned with the self-interest of the speaker as employee. *Connick,* 461 U.S. at 147. The limit of First Amendment protections was thus described in *Connick*:

> While as a matter of good judgment, public officials should be receptive to constructive criticism offered by their employees, the First Amendment does not require a public office to be run as a roundtable for employee complaints over internal office affairs.

*Id*. at 149, 103 S.Ct. at 1691.

In this case, the alleged speech must be considered as relating to classic workplace issues—Plaintiff was upset the song she wanted to be sung was not allowed by the District. This was an issue unique to Plaintiff, and concerned her own self-interest within her employment. This case presents a classic gripe about management that is not protected under *Garcetti*. Such

10

speech is not as a citizen. Because Plaintiff has failed to plead facts to demonstrate that she engaged in constitutionally protected speech activity, her complaint must be dismissed as a matter of law.

### 3. The District's interest in promoting efficiency of the public services it performs outweighs the Plaintiff's interest in free speech.

Even if Plaintiff had pled facts to support the assertion her speech was made as a private citizen on a matter of public concern, she still has failed to plead facts sufficient to show her interest in speaking on the song choice outweighed the District's interest in providing effective and efficient educational services. In *Pickering*, the Supreme Court set forth an approach designed to strike an appropriate balance between the rights of the government employee as a private individual with freedom of expression and the need of government to conduct its affairs effectively and efficiently. *Pickering*, 391 U.S. at 568, 88 S.Ct. 1731. Pickering requires the court to consider whether "the interests of the [employee], as a citizen, in commenting upon matters of public concern" outweigh "the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." *Pickering,* 391 U.S. at 568, 88 S.Ct. 1731.

In this case, the Complaint shows the District's interest in avoiding substantial disruption outweighs Plaintiff's interest in speaking on Twitter about the song choice. Plaintiff acknowledges the tweet "gained national attention." [Dkt. #1, ¶ 41]. In response, the District experienced "substantial disruption." [See Dkt. #1, ¶¶ 59- 60, citing Dr. Sebert's recommendation letter, and Sharon Theide's investigation report, attached here as Exhibit A to Joel Aziere Affidavit.][1]. Specifically, as quoted in Plaintiff's Complaint, Plaintiff "failed to raise

---

[1] Federal Rule of Civil Procedure 10(c), which provides that "[a] copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes," is permissive in nature. *Venture Assocs. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993). A plaintiff is under no obligation to attach to her complaint documents upon

[her] concerns through the appropriate channels and instead took [her] concerns public in a manner intended to bring as much attention to the District's decision as possible, which resulted in substantial disruption to the school environment." [See Dkt. #1, ¶ 60]. The District received phone calls and emails, many of which were threatening and vulgar in nature, and the District was required to increase security and police presence at the school. [See Investigation Report; Ex. A to Aziere Aff.]. Further, the District was required to divert significant time and resources toward managing and responding to the circumstances created by Plaintiff. [Investigation Report].

The District requires "a significant degree of control over [its] employees' words and actions; without it, there would be little chance for the efficient provision of public services." *See Garcetti*, 547 U.S. at 418 . Plaintiff's tweet "interfere[d] with the regular operation of the [District]" because the barrage of angry phone call and email complaints disrupted multiple employees' work. See *Rankin v. McPherson*, 483 U.S. 378, 388 (1987)*.* Furthermore, District saw the post as "undermining the interests of the District." [Dkt. #1, ¶ 60]. *Rankin*, 483 U.S. at 389 (suggesting that speech "discredit[ing]" a public employer would tend to justify remedial measures).

As such, Plaintiff has failed to plead facts demonstrating her interest in free speech outweighed the District's interest in providing effective and efficient educational services. As such, Plaintiff's claim fails on this element as well and the Complaint must be dismissed.

---

which her action is based, but a defendant may introduce certain pertinent documents if the plaintiff failed to do so. *Id.* Citing *Romani v. Shearson Lehman Hutton*, 929 F.2d 875, 879 n. 3 (1st Cir.1991) (quoting 5 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1327 at 762-63 (2d ed.1990)). Documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim. See *Ed Miniat, Inc. v. Globe Life Ins. Group, Inc*., 805 F.2d 732, 739 n. 12 (7th Cir.1986), cert. denied, 482 U.S. 915, 107 S.Ct. 3188, 96 L.Ed.2d 676 (1987). The investigation report and recommendation letter are central to Plaintiff's claims of First Amendment retaliation, and are partially quoted in her Complaint. Therefore, this Court may consider the full documents submitted by the defendant on a motion to dismiss.

**B.      Plaintiff has not Pled Sufficient Facts to Support Her Conclusory Allegation Her Alleged First Amendment Activity was a Motivating Factor in the Decision to Terminate Her Employment.**

A First Amendment retaliation claim requires the plaintiff to plead the First Amendment activity was at least a motivating factor in the defendant's decision to take the alleged retaliatory action. *Novoselsky v. Brown*, 822 F.3d 342, 354 (7th Cir. 2016) (internal citations omitted); *Wenzel v. Christopherson,* No. 16-C-1236, 2017 BL 153573, at *4 (E.D. Wis. May 8, 2017). Here, the Complaint fails to allege facts supporting the legal conclusion the protected activity was a substantial or motivating factor in the decision to terminate Plaintiff.  As explicitly stated in Paragraph 60 the Complaint:

> As stated in the report, you were entitled to disagree with the decision of the District related to the use of the song "Rainbowland" at the Heyer concert. However, the manner in which you chose to express your disagreement with the District's decision was inappropriate, disruptive, and in violation of various district policies.  You failed to raise your concerns through the appropriate channels and instead took your concerns public in a manner intended to bring as much attention to the District's decision as possible, which resulted in substantial disruption to the school environment.  Specifically, you violated the following District policies:
>
> - Page 7 of the Employee Handbook for Professional Staff Members
> - Board Policy 3179: Employee Concerns
> - Board Policy 3213: Student Supervision and Welfare
> - Board Policy 3310: Employee Expressions in Non-Instructional Settings

As the text of the letter makes clear—as quoted explicitly in the Complaint—the issue was not with the content of Plaintiff's Twitter post disagreeing with the District's decision. Rather, the issue was with the manner, method, and means by which Plaintiff chose to express her disagreement. Plaintiff failed to follow the appropriate chain of command and caused substantial disruption to the school environment as a result. Thus, Defendants would have reached the same decision even in the absence of allegedly protected conduct.

13

Because Plaintiff has failed to plead sufficient facts to support a First Amendment retaliation claim, she has failed to state a claim upon which relief may be granted, and her Complaint must be dismissed.

II. **PLAINTIFF'S § 1983 FIRST AMENDMENT RETALIATION CLAIM AGAINST JAMES SEBERT IN HIS INDIVIDUAL CAPACITY MUST BE DISMISSED BECAUSE THE COMPLAINT IS FATALLY FLAWED FOR FOUR REASONS.**

A. **First, Plaintiff Cannot Allege Dr. Sebert in His Individual Capacity Acted under Color of State Law.**

To state a claim for relief in an action brought under § 1983, a plaintiff must establish the alleged deprivation was committed under color of state law. *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50 (1999); *Spiegel v. McClintic*, 916 F.3d 611, 616 (7th Cir. 2019). The purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights. *Carey v. Piphus*, 435 U. S. 247, 254-257 (1978). The under color-of-state-law element means § 1983 does not permit suits based on private conduct, "no matter how discriminatory or wrongful." *Sullivan*, 526 U.S. at 50 (citation omitted).

However, a private citizen can act under color of law under the "conspiracy theory" of § 1983 liability if there is "evidence of a *concerted effort* between a state actor and that individual." *Spiegel*, 916 F.3d at 616; *Fries v. Helsper*, 146 F.3d 452, 457 (7th Cir. 1998). "To establish § 1983 liability through a conspiracy theory, a plaintiff must demonstrate that the following: (1) a state official and private individual(s) reached an understanding to deprive the plaintiff of his constitutional rights, and (2) those individual(s) were willful participant[s] in joint activity with the State or its agents." *Id.* (internal citations omitted).

The core issue presented with regard to Dr. Sebert is not whether Plaintiff was discharged because of her speech, but whether Dr. Sebert's role can fairly be seen as state action. *See*

*Rendell-Baker v. Kohn*, 457 U.S. 830, 839 (1982). "If the action of the respondent [] is not state action, our inquiry ends." *Id.* Because Dr. Sebert—as an *individual—*did not act under color of state law and his actions cannot be fairly treated as those of the state, the inquiry ends here.

First, the facts as alleged only show the Board – not Dr. Sebert – took official action with regard to Ms. Tempel's employment. "The Board accepted Dr. Sebert's recommendation and fired Ms. Tempel." [Dkt. #1, p. 1-2 Preliminary Statement]. "The Board voted unanimously to adopt Dr. Sebert's recommendation and fire Ms. Tempel effective July 12, 2023." [Dkt. #1,¶ 64]. "The Board fired Ms. Tempel because she posted on social media and spoke to news outlets about the District's decision regarding "Rainbowland," the District's application of Board Policy 2240, and related issues." [Dkt. #1, ¶ 79]. Thus, Dr. Sebert did not take the official step that allegedly caused harm to the Plaintiff.

Additionally, only the Board is vested with the explicit authority to employ or dismiss a teacher. Thus, Dr. Sebert did not even have the option of taking an official employment action with regard to Plaintiff where the state did not grant him the authority to do so. Deciding whether a specific official has final policymaking authority is a question of state law. *See Duda v. Board of Educ. of Franklin Park Pub. Sch. Dist. No. 84*, 133 F.3d 1054, 1061 (7th Cir. 1998). Under Wis. Stat. § 118.22(2), "[n]o teacher may be employed or dismissed except by a majority vote of the full membership of the board." The Complaint even admits "[t]he Board has final policymaking authority with respect to the District. Wis. Stat. § 120.44(2); *Gernetzke v. Kenosha Unified Sch. Dist. No. 1*, 274 F.3d 464, 469 (7th Cir. 2001)." (Compl, ¶ 80). Indeed, "nothing in the School Code allows us to infer that a superintendent or principal has been delegated policymaking authority with respect to personnel decisions." *Horwitz v. Bd. of Educ. of Avoca Sch. Dist. No. 37*, 260 F.3d 602, 619 (7th Cir. 2001).

15

The case Plaintiff cites to in her Complaint expressly states § 1983 liability is limited to "situations in which the official who commits the alleged violation of the plaintiff's rights has authority that is final." *Gernetzke*, 274 F.3d at 469. "School superintendents, principals, and teachers in Wisconsin do not have final authority in this sense, … as they would if the Wisconsin legislature had vested the authority to make all decisions concerning school administration in them rather than in the school boards." *Id.* Thus, Plaintiff expressly admits Dr. Sebert does not have final authority of employment decisions, which dooms her claim. Accordingly, Dr. Sebert cannot have acted under color of state law or have been considered a state actor where he had no state-designated authority to take employment actions with regard to a teacher and the facts as alleged only show the Board took official employment action with regard to Plaintiff.

Second, nor do the facts as alleged establish a conspiracy theory for individual § 1983 liability. Plaintiff alleges Dr. Sebert made a recommendation to the Board in favor of terminating Plaintiff's employment after adopting the findings of an investigation into Plaintiff's misconduct. (Compl ¶¶ 61, 76). However, a mere recommendation is not an official action. Nor can a recommendation be construed as joint action. The Board was free to take whatever action it deemed appropriate based on evidence presented at the hearing, regardless of any recommendation. Again, "[n]o teacher may be employed or dismissed except by a majority vote of the full membership of the board." Wis. Stat. § 118.22(2).

The facts as alleged simply do not show Dr. Sebert and the Board reached an understanding to deprive Plaintiff of her constitutional rights or Dr. Sebert participated in joint activity with the Board. The Board held a hearing to consider all relevant facts and circumstances and unanimously voted to terminate Plaintiff on July 12, 2023. [Dkt. #1, ¶¶ 63-64]. Dr. Sebert had no authority to participate jointly with the Board in the Board's determination or ultimate

decision regarding Plaintiff's employment. Plaintiff has offered no allegation indicating Dr. Sebert participated personally in the alleged deprivation which forms the basis for Plaintiff's claims. A mere recommendation does not rise to the level of mutual understanding or joint action.

The Complaint is completely void of any allegations of joint action between Dr. Sebert and the Board. Even "mere allegations of joint action or a conspiracy do not demonstrate that the defendants acted under color of state law and are not sufficient to survive a motion to dismiss." *Fries*, 146 F.3d at 458. Thus, as a matter of law and under the facts as alleged, Dr. Sebert cannot have acted under color of state law and the allegations with regard to Dr. Sebert in his individual capacity are insufficient to survive a motion to dismiss.

**B.  Second, Plaintiff Cannot Establish a Causal Connection between Dr. Sebert and the Official Termination Action.**

To recover damages under § 1983, a plaintiff must establish a defendant was personally responsible for the deprivation of a constitutional right. *Sheik-Abdi v. McClellan*, 37 F.3d 1240, 1248 (7th Cir. 1994). "An official satisfies the personal responsibility requirement of section 1983 if she acts or fails to act with a **deliberate or reckless disregard** of plaintiff's constitutional rights, or if the conduct causing the constitutional deprivation occurs at her direction or with her knowledge and consent." *Crowder v. Lash*, 687 F.2d 996, 1005 (7th Cir. 1982) (emphasis added). In short, some causal connection between the action complained about and the individual sued is necessary for § 1983 recovery.

Plaintiff fails to plead any viable causal connection between Dr. Sebert and the Board's official employment action. Although the Complaint states Dr. Sebert's conduct as alleged in the Complaint was "malicious or in reckless disregard of Ms. Tempel's First Amendment right to freedom of speech," Dr. Sebert's conduct as alleged in the Complaint does not rise to the

17

requisite level. [Dkt. #1, ¶ 66]. The deliberate or reckless disregard standard is simply not met here, despite a conclusory statement to that effect. Plaintiff has failed to plead any viable causal connection between Dr. Sebert and the Board's official termination action. Plaintiff specifically admits Dr. Sebert did not take the alleged adverse action and he in no way could have ("The Board fired Ms. Tempel." [Dkt. #1, ¶ 79]). "The Board has final policymaking authority with respect to the District. Wis. Stat. § 120.44(2); *Gernetzke v. Kenosha Unified Sch. Dist. No. 1*, 274 F.3d 464, 469 (7th Cir. 2001)." [Dkt. #1, ¶ 80]. Although Dr. Sebert issued a recommendation in favor of terminating Plaintiff, as discussed above, the Board at all times maintained final authority and was free to take whatever action it deemed appropriate based on evidence presented at the hearing. Plaintiff has offered no allegation indicating Dr. Sebert participated personally in the alleged deprivation which forms the basis for Plaintiff's claims. Thus, there is simply no causal connection between Dr. Sebert and the Board's action in terminating Plaintiff's employment.

Even if this Court somehow finds a viable connection between Dr. Sebert and the Board's official action (and none exists), the facts as alleged in the Complaint only show Dr. Sebert's conduct was reasonable and did not rise to the level of "deliberate or reckless disregard." As written in the letter Dr. Sebert sent to Plaintiff on May 15, 2023, which is explicitly quoted in the Complaint, Dr. Sebert states Plaintiff was "entitled to disagree with the decision of the District related to the use of the song 'Rainbowland' at the Heyer concert." [Dkt. #1, ¶ 60]. The issue was not with the content of Plaintiff's speech disagreeing with the District's decision. Rather, the issue was with the manner, method, and means in which Plaintiff chose to express her disagreement.

As further explained in the letter, the manner in which Plaintiff chose to express her disagreement with the District's decision was "inappropriate, disruptive, and in violation of various District policies." [Dkt. #1, ¶ 60]. After an investigation, Plaintiff's actions were found to violate Page 7 of the Employee Handbook for Professional Staff Members, Board Policy 3179, Board Policy 3213, and Board Policy 3310. [Dkt. #1, ¶¶ 59, 60]. Plaintiff failed to raise her concerns "through the appropriate channels" and instead took her concerns "public in a manner intended to bring as much attention to the District's decision as possible, which resulted in a substantial disruption to the school environment." [Dkt. #1, ¶ 60]. In other words, Plaintiff failed to follow the appropriate chain of command. Plaintiff did so "deliberately and repeatedly" beginning on March 21, 2023. [Dkt. #1, ¶ 60]. Such intentional misconduct and the impact it had on the District could not be tolerated. [Dkt. #1, ¶ 60].

Taking these facts alleged as true, there is no doubt Dr. Sebert acted reasonably in adopting the findings of the investigation and issuing a recommendation in favor of terminating Plaintiff. These facts in no way show deliberate or reckless disregard of Plaintiff's constitutional rights. To the contrary, Dr. Sebert explicitly respected Plaintiff's constitutional rights by stating Plaintiff was entitled to disagree with the District's decision and it was simply the manner in which Plaintiff chose to express her disagreement that was inappropriate, disruptive and in violation of various District policies. Plaintiff failed to follow the appropriate chain of command and caused substantial disruption to the school environment as a result. "As an employer, a governmental agency must have the "prerogative to remove employees whose conduct hinders efficient operation and to do so with dispatch. Prolonged retention of a disruptive or otherwise unsatisfactory employee can adversely affect discipline and morale in the work place, foster disharmony, and ultimately impair the efficiency of an office or agency." *Connick*, 461 U.S. at

151; *Khuans v. Sch. Dist. 110*, 123 F.3d 1010, 1014 (7th Cir. 1997). Thus, even if the Court somehow finds a causal connection between Dr. Sebert and the Board's official action (and none exists), the facts as alleged in the Complaint only show Dr. Sebert acted reasonably and within the confines of the law. Such conduct simply did not rise to the requisite level of "deliberate or reckless disregard." Accordingly, the allegations with regard to Dr. Sebert in his individual capacity are insufficient to survive a motion to dismiss.

### C. Third, the Facts as Alleged Do Not Properly Establish a First Amendment Retaliation Claim.

With respect to the individual capacity issue, it is necessary to consider whether a plaintiff has successfully established a First Amendment retaliation claim. *See Horwitz*, 260 F.3d at 618. In order to establish a § 1983 claim under the First Amendment, the plaintiff has the burden of establishing (1) his or her conduct was constitutionally protected, and (2) the protected conduct was a "substantial" or "motivating" factor in the decision to terminate him or her. *Mt. Healthy City School District Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977); *Swetlik v. Crawford*, 738 F.3d 818 , 825 (7th Cir. 2013); *Nieves v. Bd. of Educ. of City of Chi.*, 297 F.3d 690, 693 (7th Cir. 2002); *Horwitz*, 260 F.3d at 618; *Pugh v. City of Attica, Indiana*, 259 F.3d 619, 629-30 (7th Cir. 2001); *Gooden v. Neal*, 17 F.3d 925 , 928 (7th Cir. 1994). If he or she carries that burden, then the defendants would have the opportunity to establish they would have reached the same decision even in the absence of the protected conduct. *Nieves*, 297 F.3d at 693. If the speech at issue is not a "substantial or motivating factor" in a district's decision to terminate an employee, then the plaintiff cannot have established a successful First Amendment retaliation claim against school district officials in their individual capacities. *See Horwitz*, 260 F.3d at 618.

20

First, as discussed in detail above, Plaintiff's activity was not protected by the First Amendment because she has not alleged sufficient facts to support her conclusion the speech (1) is made as a private citizen, (2) addresses a matter of public concern and (3) her interest outweighs the state's interest as an employer in "promoting effective and efficient public service." *Houskins v. Sheahan*, 549 F.3d 480, 490 (7th Cir. 2008).

Second, as is also set forth above, the alleged protected activity was not a substantial or motivating factor in the decision to terminate Plaintiff. Rather, the issue was with the manner, method, and means in which Plaintiff chose to express her disagreement, which was in violation of multiple District policies.

On a related note, as discussed above, Dr. Sebert did not take any official termination action against Plaintiff. Plaintiff offers no allegation indicating Dr. Sebert participated personally in the alleged deprivation which forms the basis for Plaintiff's claims. Nor does a mere recommendation (which was made in his official capacity) carry any weight. The Board was free to take whatever action it deemed appropriate based on the evidence presented at the hearing. Thus, there is simply no causal connection between Dr. Sebert and the Board's action in terminating Plaintiff's employment.

Because the speech at issue was not a "substantial or motivating factor" in the Board's decision to terminate the Plaintiff, the Plaintiff cannot have established a successful First Amendment retaliation claim against Dr. Sebert in his individual capacity. *See Horwitz*, 260 F.3d at 618. Thus, the allegations with regard to Dr. Sebert in his individual capacity are insufficient to survive a motion to dismiss.

**D. Fourth, in Any Event, Superintendent Sebert is Entitled to Qualified Immunity.**

Even if somehow the Court were to conclude the Plaintiff properly pled a First Amendment claim, Dr. Sebert is entitled to qualified immunity. Qualified immunity offers complete protection for individual public officials performing discretionary functions "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). For the law to be clearly established, the law "must have earlier been developed in such a concrete and factually defined context to make it obvious to all reasonable government actors, in the defendant's place, that 'what he is doing' violates federal law." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). Government employees can act lawfully even when motivated by a dislike or hostility to certain protected behavior. *See Mt. Healthy*, 429 U.S. at 286-287.

Here, there is no doubt Dr. Sebert, Superintendent, was performing discretionary functions. Nor is there any possibility Dr. Sebert could have known his ordinary course of disciplinary action in adopting the findings of an investigation, that looked into alleged misconduct and found multiple policy violations, and recommending the Plaintiff's termination as a result of such misconduct allegedly violated the Plaintiff's First Amendment rights. There is no allegation in the Complaint of facts or law that would have placed Dr. Sebert on notice he was constitutionally prohibited from adopting the findings of an investigation or issuing a recommendation for termination of a teacher who substantially disrupted the school environment and violated multiple District policies by usurping the chain of command and instead took her concerns as public as possible. Thus, in any event, the claims against Dr. Sebert should be dismissed under the doctrine of qualified immunity.

22

It is important to note the Complaint does not make allegations against Dr. Sebert in his official capacity. Even if it did, Dr. Sebert would be immune from claims for monetary damages under Section 1983. *Maddox v. Love*, 655 F.3d 709, 716 (7th Cir. 2011) (*citing Brown v. Budz*, 398 F.3d 904, 917-18 (7th Cir. 2005) ("To the extent [the plaintiff] seeks monetary damages from defendants acting in their official capacity, those claims ... are dismissed as they are barred by the Eleventh Amendment.")).

As such, based on the foregoing, Plaintiff's claims against Dr. Sebert in his individual capacity fail to state a claim upon which relief may be granted and they must be dismissed.

## <u>CONCLUSION</u>

As set forth above, Plaintiff's Complaint fails to state a claim upon which relief may be granted. As such, her Complaint must be dismissed in its entirety as to both the District and as to Dr. Sebert.

Dated this 1st day of November, 2023.

Respectfully Submitted,

BUELOW VETTER BUIKEMA OLSON
& VLIET, LLC

*/s/ Joel S. Aziere*
Joel S. Aziere (WI Bar No. 1030823)
jaziere@buelowvetter.com
Christina A. Katt (WI Bar No. 1073979)
ckatt@buelowvetter.com

Buelow Vetter Buikema Olson & Vliet, LLC
20855 Watertown Road, Suite 200
Waukesha, Wisconsin 53186
Telephone: (262) 364-0250
Facsimile: (262) 364-0270

*Attorneys for Defendants, School District of Waukesha and James Sebert*

23