UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

MELISSA TEMPEL,

        Plaintiff,                                            Case No.: 2:23-CV-01169

   v.

SCHOOL DISTRICT OF WAUKESHA,

and

JAMES SEBERT,

        Defendants.

**DEFENDANTS' REPLY BRIEF IN SUPPORT OF
MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

## I. PLAINTIFF'S FIRST AMENDMENT RETALIATION CLAIM MUST BE DISMISSED BECAUSE IT FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED.

Plaintiff's Response in Opposition to Defendants' Motion to Dismiss does nothing to clarify or otherwise remedy the legal insufficiency of her Complaint. [Dkt. #12]. To survive a motion to dismiss, a complaint must contain more than "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). Here, Plaintiff proffers mere conclusory allegations in support of her First Amendment claims against the School District of Waukesha ("District"). [Dkt. #1]. Because Plaintiff has "not nudged [her] claims across the line from conceivable to plausible," her Complaint cannot survive dismissal under Rule 12(b)(6). *Twombly*, 550 U.S. at 570.

### A. The Court Should Consider the Investigation Report and Recommendation Letter in Deciding the Instant Motion.

The Court should consider the investigation report and recommendation letter attached to Defendants' Motion to Dismiss and principal brief in support thereof. [Dkt. #8.1]. Not only are such documents relevant to the instant Motion, but this Court also has considerable discretion to assess them pursuant to Fed. R. Civ. P. 10(c) and related Seventh Circuit jurisprudence. [Dkt. #12, pp. 18-20]. *See, e.g., Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687 (7th Cir. 2012); *188 LLC v. Trinity Indus. Inc.*, 300 F.3d 730 (7th Cir. 2002); *Tierney v. Vahle*, 304 F.3d 734 (7th Cir. 2002).[1]

---

[1] Rule 10(c) provides that "[a] copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes." Relatedly, it "is also well-settled in this circuit that 'documents attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [her] claim.'" *Trinity*, 300 F.3d at 735 (*quoting Wright v. Assoc. Ins. Cos. Inc.*, 29 F.3d 1244, 1248 (7th Cir. 1994)). The foregoing constitutes an exception to the general rule that when additional evidence is attached to a motion to dismiss, "the court must either convert the 12(b)(6) motion into a motion for summary judgment under Rule 56 . . . or exclude the documents attached to the motion to dismiss and continue under Rule 12." *Levenstein v. Salafsky*, 164 F.3d 345, 347 (7th Cir. 1998); see also *Brownmark*, 682 F.3d at 690. This exception is narrow; it is aimed at situations in which a plaintiff quotes from a document or, as Plaintiff notes, the case requires interpretation of an

Plaintiff's Complaint cited only those portions of the record beneficial to her claims despite the fact the unabridged investigation report and recommendation letter—which include screenshots of Plaintiff's other tweets and the full context in which they were published—are crucial to this Court's understanding of the dispute. *See Trinity*, 300 F.3d at 735. Namely, the report and letter provide further information regarding Plaintiff's conduct and Defendants' ultimate decision to terminate her employment, both of which impact the *Pickering* analysis. Plaintiff cannot avoid dismissal of her unsupported claims by omitting documents that fatally undermine her allegations. Because Plaintiff' Complaint referenced—and, indeed, quoted from—the investigation report and recommendation letter, this Court may properly consider same without converting the instant Motion into a motion for summary judgment.

**B.  Plaintiff Has Not Pled Facts Sufficient to Support Her Conclusory Allegation She Engaged in Constitutionally Protected Activity.**

*1.  Plaintiff Has Not Pled Sufficient Facts to Show She Made Her Comments as a Private Citizen Over a Matter of Public Concern.*

A public employee's speech made simply out of purely personal interests does not receive First Amendment protection. *See Kristofek v. Village of Orland Hills*, 832 F.3d 785, 794 (7th Cir. 2016). Contrary to Plaintiff's insinuations, the Constitution "does not require a public office to be run as a roundtable for employee complaints over internal office affairs"; nor does it afford public employees a *carte blanche* to speak their minds or further their interests without regard for the consequences. *Connick v. Myers*, 461 U.S. 138, 149 (1983). [Dkt. #12, pp. 8-9].

Plaintiff's posts on Twitter and comments during interviews with media concerned a personal workplace gripe; Plaintiff was upset the District did not allow her students to sing the

---

unattached contract. [Dkt. #12, pp. 18.19]. *See Tierney*, 304 F.3d at 738. The purpose of the exception—and the likely reason behind Plaintiff's failure to attach the unabridged investigation report and recommendation letter to her Complaint—"is to prevent parties from surviving a motion to dismiss by artful pleading or by failing to attach relevant documents." *Trinity*, 300 F.3d at 735 (internal citation omitted); *see also Tierney*, 304 F.3d at 738 ("the concern is that, were it not for the exception, the plaintiff could evade dismissal under Rule 12(b)(6) simply by failing to attach to [her] complaint a document that provided that [her] claim had no merit.")

song she preferred. [Dkt. #7, p. 10; Dkt. #8.1, pp. 7-11]. *See Bivens v. Trent*, 591 F.3d 555, 561 (7th Cir. 2010) ("[I]f the speech concerns a subject of public interest, but the expression addresses only the personal effect upon the employee, then as a matter of law the speech is not of public concern.") (internal citations omitted). Such is the case here where Plaintiff posted the following Tweets regarding the District's decision on "Rainbowland":

- "<u>My</u> first graders were so excited to sing Rainbowland for <u>our</u> spring concert but it has been vetoed by <u>our</u> administration. When will it end?"
- "The song Rainbow Connection from the Muppet Movie has also been taken off <u>our</u> spring concert list now."
- "Rainbow Connection was unbanned today after parents sent emails to admin. Alliance for Education in Waukesha knows how to ally. <u>I don't know where **I'd be** without them</u>."

[Dkt. #8.1, pp. 7-8, 11 (emphasis added)].

Based on the foregoing, Plaintiff was speaking solely from the perspective of a public-school teacher dissatisfied with a workplace decision and upset about its impact on her rather than from that of a private citizen discussing matters of public concern that could actually impact members of the public. Plaintiff's opposition offers nothing to refute that assertion and wholly misses the point. Educators' general capacity to offer meaningful insight on school policies does not enable them free reign to air their personal grievances without consequence. It is only when a teacher speaks in her capacity as a private citizen on matters of public concern—and only when her interest in free speech outweighs her employer's interest in ensuring smooth operations—that her speech receives constitutional protection.

Here, Plaintiff disagreed with an administrative decision that would only impact the first-grade class and its teacher, stating, "<u>My</u> first graders were so excited to sing Rainbowland for <u>our</u> spring concert but it has been vetoed by <u>our</u> administration" and "Rainbow Connection was unbanned today after parents sent emails to admin. Alliance for Education in Waukesha knows

3

how to ally. I don't know where **I'd be** without them." [Dkt. #8.1, pp. 7, 11]. The song a first-grade class sings at a school concert is not of public import, and, in this case, Plaintiff published these posts to communicate her personal disappointment with the District's decision. Plaintiff offers nothing in her opposition to combat this assertion. Thus the case must be dismissed, with prejudice.

### 2. The District's Interest in Promoting the Efficiency of the Public Services it Performs Outweighs Plaintiff's Interest in Free Speech.

As both parties have noted, the *Pickering* balancing requires the Court to consider whether a plaintiff's "interest, 'as a citizen, in commenting upon matters of public concern,' outweighs [the government's interest], 'as an employer, in promoting the efficiency of the public services it performs through its employees.'" *Kristofek v. Vill. of Orland Hills*, 832 F.3d 785, 795 (7th Cir. 2016) (*quoting Pickering v. Bd. of Educ.*, 391 U.S. 563, 568 (1968)). [Dkt. #7, p. 11; Dkt. #12, p. 15].[2]

Here, the Complaint evinces the District's interest in avoiding substantial disruption outweighs Plaintiff's interest in expressing her disdain for the District's spring concert song choice. Plaintiff expressly acknowledges her Tweets "gained national attention" and substantially disrupted District operations. [Dkt. #1, ¶¶ 41, 59-60; Dkt. #8.1, pp. 1-6]. Instead of raising her concerns through the appropriate channels, Plaintiff "instead took [her] concerns public in a manner intended to bring as much attention to the District as possible, which resulted in substantial disruption to the school environment." [Dkt. #1, ¶ 60; Dkt. #8.1, p. 1]. As a direct

---

[2] This analysis involves a consideration of various factors, including, but not limited to: (1) whether the speech would create problems in maintaining discipline or harmony among co-workers; (2) whether the employment relationship is one in which personal loyalty and confidence are necessary; (3) whether the speech impeded the employee's ability to perform her responsibilities; (4) the time, place, and manner of the speech; (5) the context in which the underlying dispute arose; (6) whether the matter was one on which debate was vital to informed decision-making; and (7) whether the speaker should be regarded as a member of the general public. *See Caruso v. De Luca*, 81 F.3d 666 (7th Cir. 1996).

4

result of Plaintiff's actions, the District began to receive threatening phone calls and emails and was consequently required to increase security and police presence at the school. [Dkt. #8.1, p. 1]. Moreover, the District was compelled to divert significant time and resources to managing and responding to the dire circumstances Plaintiff created. [Dkt. #8.1, pp. 1-6]. The foregoing reality—which impinges on the first, third, and fifth factors identified above—necessitated the District exercise constitutionally permissible "control over [Plaintiff's] words and actions" in order to ensure 'the efficient provision of public services." *Garcetti*, 547 U.S. at 418.

Plaintiff contends "[d]isruption, even to the extent of demoralization, is not enough to overcome the First Amendment's protection of the public nature of such speech" and "[a]n employee's interest in exposing wrongdoing by public officials outweighs any incidental disruption that follows." [Dkt. #12, p. 16 (internal citation omitted)]. But in this case, there was no allegation of "wrongdoing by public officials"—the District simply chose not to have its first-grade class sing the song Plaintiff preferred. Contrary to Plaintiff's insinuations, debate is not vital to informed decision-making on elementary school concert song choice. [*Contra* Dkt. #12, p. 17]. Further, the disruption Plaintiff's disingenuous commentary caused was not merely "incidental"; the emails and phone calls Defendants received were so numerous and alarming the District increased its on-campus security and police presence in order to protect its students, faculty, and staff from any substantiated threats toward the District. [*Contra* Dkt. #12, p. 16]. In short, the District suffered actual and substantial harm as a direct result of Plaintiff's conduct, which significantly impacted its ability to provide public services safely and efficiently.

Rather than follow the appropriate chain of command in communicating her disappointment, Plaintiff decided, in effect, to shout "fire!" in a crowded theater. *C.f. Schenck v. United States*, 249 U.S. 47, 52 (1919), *distinguished by Brandenburg v. Ohio*, 395 U.S. 444

5

(1969) (discussing the doctrine of incitement). Based on the foregoing, the *Pickering-Connick* analysis favors Defendants, and this Court must dismiss.

> **C.   Plaintiff Has Not Pled Facts Sufficient to Support Her Conclusory Allegation Her Speech Was a Motivating Factor in the District's Decision to Terminate Her Employment.**

Plaintiff has not pled facts sufficient to support her contention her statements motivated the District's decision to terminate her. First Amendment retaliation claims require the plaintiff to plead her speech was at least a motivating factor in the defendant's decision to take the allegedly retaliatory action against her. [Dkt. #7, p. 12; Dkt. #12, p. 20]. *See Novoselsky v. Brown*, 822 F.3d 342, 354 (7th Cir. 2016) (internal citations omitted).

In this instance, the Complaint fails to allege facts to support the conclusion Plaintiff's "speech" motivated her termination. As the recommendation letter Plaintiff cites in her Complaint makes clear, the District decided to terminate Plaintiff not because of what she said, but rather the manner, method, and means by which Plaintiff chose to express her disagreement. [Dkt. #1, ¶ 60; Dkt. #8.1, p. 1]. Plaintiff argues the manner of one's speech "is not a question of causation, but rather a consideration under *Pickering* balancing." [Dkt. #12, p. 20]. This misconstrues Defendants' argument, however. The District did not terminate Plaintiff as a result of her speech, but rather because of her deceitful and irresponsible conduct in inciting a national uproar over a trivial workplace disagreement. As such, the District's decision to terminate Plaintiff was constitutionally permissible, and Plaintiff has not pled facts sufficient to suggest otherwise.

## II. PLAINTIFF'S § 1983 FIRST AMENDMENT RETALIATION CLAIM AGAINST DR. SEBERT IN HIS INDIVIDUAL CAPACITY MUST BE DISMISSED BECAUSE THE COMPLAINT IS FATALLY FLAWED FOR FOUR REASONS.

Plaintiff misconstrues Defendants' arguments with regard to Dr. Sebert. To clarify, first, Dr. Sebert did not act under color of state law because he does not have final decision-making authority and Plaintiff does not allege any misuse of the authority Dr. Sebert does possess. Second, Plaintiff does not establish Dr. Sebert was personally responsible for any alleged deprivation of a constitutional right or that he acted with deliberate or reckless disregard. Third, Plaintiff has not established her conduct was constitutionally protected or the alleged protected conduct was a "substantial" or "motivating" factor in the Defendants' challenged actions. Fourth, Plaintiff has not met her burden to defeat the defense of qualified immunity and thus, Dr. Sebert is entitled to same. Accordingly, Plaintiff's claim with regard to Dr. Sebert cannot survive a motion to dismiss.

### A. Plaintiff Fails to Sufficiently Allege Facts Establishing Dr. Sebert Acted under Color of State Law.

Plaintiff falsely argues Defendants contend "Dr. Sebert did not take any of the actions alleged in the Complaint pursuant to state law" and Defendants "appear to confuse [individual capacity] with alleging that Dr. Sebert acted as a private individual." [Dkt. #12, pp. 22, 24]. To clarify, Dr. Sebert did not take the official employment action terminating Plaintiff, nor could he have when he does not have final decision-making authority and that final authority resides with the Board alone.[3] [Dkt. #7, pp. 15-16]. Although Plaintiff lists various Superintendent duties and argues Dr. Sebert's actions relate to his duties as Superintendent, this does not satisfy the

---

[3] The case Plaintiff cites in her Complaint expressly states § 1983 liability is limited to "situations in which the official who commits the alleged violation of the plaintiff's rights has authority that is final." *Gernetzke v. Kenosha Unified Sch. Dist. No. 1*, 274 F.3d 464, 469 (7th Cir. 2001). "School superintendents, principals, and teachers in Wisconsin do not have final authority in this sense, … as they would if the Wisconsin legislature had vested the authority to make all decisions concerning school administration in them rather than in the school boards." *Id.* Thus, Plaintiff expressly admits Dr. Sebert does not have final authority of employment decisions, which dooms her claim.

7

"under color of state law" element. "Not every action by a state official or employee is to be deemed as occurring `under color' of state law;"[4] rather, action is taken under color of state law "when it involves a misuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law."[5] There is no allegation in Plaintiff's Complaint or response brief that Dr. Sebert misused his authority; rather the facts alleged in the Complaint show Dr. Sebert acted in line with his authority. As written in the May 15, 2023 letter, Plaintiff was "entitled to disagree with the decision of the District related to the use of the song 'Rainbowland' at the Heyer concert." [Dkt. #1, ¶ 60]. The issue was with the manner, method, and means by which Plaintiff chose to express her disagreement. Plaintiff failed to raise her concerns "through the appropriate channels" and instead took her concerns "public in a manner intended to bring as much attention to the District's decision as possible, which resulted in a substantial disruption to the school environment." [*Id.*]. In other words, Plaintiff failed to follow the appropriate chain of command. Plaintiff did so "deliberately and repeatedly". [*Id.*]. The District was bombarded with phone calls and emails that were threatening and vulgar in nature, so much so that staff and families were scared to return to school, and the District was required to increase security and police presence at the school. [Dkt #8.1, p. 5]. Further, the District was required to divert significant time and resources toward managing and responding to the circumstances created by Plaintiff. [*Id.* at p. 4]. Such intentional misconduct and the negative impact it had on the District could not be tolerated. [Dkt. #1, ¶ 60]. Dr. Sebert properly used his authority in adopting the findings of the investigation and issuing a recommendation in favor of terminating Plaintiff. [Dkt. #7, pp. 18-20]. The facts alleged in the Complaint show Dr. Sebert did not misuse his authority. Nor does

---

[4] *Hughes v. Meyer*, 880 F.2d 967, 971 (7th Cir. 1989).
[5] *Honaker v. Smith*, 256 F.3d 477, 484-85 (7th Cir. 2001).

Plaintiff make any such allegation. Thus, Plaintiff cannot maintain a § 1983 action against Dr. Sebert in his individual capacity where he did not act under color of state law.

B. **Plaintiff Fails to Sufficiently Allege Facts Establishing Dr. Sebert was Personally Responsible for an Alleged Deprivation of a Constitutional Right.**

Plaintiff does not establish the personal responsibility requirement and instead confuses this with general causation.[6] [Dkt. #12, p. 24]. The personal responsibility is only established if an official "acts or fails to act with a **deliberate or reckless disregard** of plaintiff's constitutional rights, or if the conduct causing the constitutional deprivation occurs at her direction or with her knowledge and consent."[7]

Plaintiff proffers no facts indicating Dr. Sebert participated personally in any of the alleged deprivations forming the basis for Plaintiff's claims. First, Plaintiff admits Dr. Sebert did not take the official employment action terminating Plaintiff's employment ("The Board fired Ms. Tempel." [Dkt. #1, ¶ 79]). Second, although Dr. Sebert issued a recommendation in favor of terminating Plaintiff, the Board at all times maintained final authority and was free to take whatever action it deemed appropriate based on evidence presented at the hearing. Dr. Sebert was not involved in the Board's deliberations or ultimate decision regarding Plaintiff's employment. Third, Plaintiff argues Dr. Sebert commissioned the Thiede Investigative Report. [Dkt. #12, p. 25]. However, the investigation report makes clear "[t]he District initiated an investigation" and "Assistant Superintendent of Hurman Resources, Sharon Thiede, conducted the investigation." [Dkt. #8.1, p. 2]. Dr. Sebert commissioned nothing. Thus, Dr. Sebert did not participate personally in any of these actions allegedly forming the basis for Plaintiff's

---

[6] In order to recover damages, a plaintiff bringing suit against an individual official under § 1983 must establish a defendant's personal responsibility for the claimed deprivation of a constitutional right. *Crowder v. Lash*, 687 F.2d 996, 1005 (7th Cir. 1982). In short, some causal connection between the action complained about and the individual sued is necessary for § 1983 recovery.
[7] *Id.*

9

constitutional deprivation claims and therefore cannot be held liable for any purported damages related to same.

Even if any of the above actions could be construed as occurring at Dr. Sebert's direction or with his knowledge or consent, such actions simply do not rise to the "deliberate or reckless disregard" level. In fact, Dr. Sebert acted reasonably in adopting the investigation findings and issuing a recommendation in favor of terminating Plaintiff. [Dkt. #7, pp. 18-20].

Nor does the fourth alleged action regarding the written communication co-authored by Dr. Sebert and the Board President and sent to School District of Waukesha "Stakeholders" rise to the "deliberate or reckless disregard" level. Dr. Sebert acted reasonably in co-authoring such communication for the reasons discussed above in Section II.A.

Thus, even if the Court somehow finds personal responsibility between Dr. Sebert and the actions Plaintiff alleges deprived her of a constitutional right, the facts as alleged in the Complaint only show Dr. Sebert acted reasonably and within the confines of the law. Such conduct simply does not rise to the requisite level of "deliberate or reckless disregard." Thus, Plaintiff cannot maintain a § 1983 action against Dr. Sebert in his individual capacity.

**C.     The Facts as Alleged Do Not Properly Establish a First Amendment Retaliation Claim.**

As shown above in Section I, Plaintiff has not proffered facts sufficient to establish her conduct was constitutionally protected or the alleged protected conduct was a "substantial" or "motivating" factor in the decision to terminate her.[8] Instead, Plaintiff asks this Court to "reasonably infer" the Plaintiff's speech was a condition for Dr. Sebert's actions. [Dkt. #12, p. 26]. This Honorable Court simply cannot infer facts that do not exist.

---

[8] In order to establish a § 1983 claim under the First Amendment, the plaintiff has the burden of establishing (1) his or her conduct was constitutionally protected, and (2) the protected conduct was a "substantial" or "motivating" factor in the decision to terminate him or her. *Mt. Healthy City School District Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977).

10

Plaintiff further argues causation is met because Plaintiff's "speech is the focus of each of Dr. Sebert's actions as well as this lawsuit." [*Id.*]. However, that is not what the law requires. If the speech at issue is not a "substantial or motivating factor" in the defendant's challenged actions, then the plaintiff cannot have established a successful First Amendment retaliation claim against school district officials in their individual capacities.[9] First, as discussed in Section I.C. above, the alleged protected activity was not a substantial or motivating factor in the decision to terminate Plaintiff. Additionally, Dr. Sebert did not take the official action that terminated Plaintiff's employment, nor did he have the authority to. *See* Wis. Stat. § 118.22(2). Second, Dr. Sebert issued a recommendation to the Board for the reasons explicitly quoted in the Complaint and pursuant to his authority.[10] [Dkt. #1, ¶ 60]. Third, the investigation ensued to investigate policy violations by Plaintiff, which were confirmed. [*Id.* at ¶¶ 59-60]. Fourth, Dr. Sebert co-authored a written communication with Board President to Waukesha Stakeholders for the reasons discussed above in Section II.A. that did not even name the Plaintiff. Defendants' actions only occurred because of the improper manner, method, and means by which Plaintiff chose to express her disagreement, as discussed above in Section II.A. Such actions had nothing to do with her speech. Thus, the speech at issue was not a "substantial or motivating factor" in the actions allegedly depriving Plaintiff of her constitutional right. As such, Plaintiff cannot have established a First Amendment retaliation claim against Dr. Sebert in his individual capacity and the allegations with regard to Dr. Sebert are insufficient to survive a motion to dismiss.

---

[9] *See Horwitz v. Bd. of Educ. of Avoca Sch. Dist. No. 37*, 260 F.3d 602, 618 (7th Cir. 2001).
[10] Wis. Stat. §118.24(2)(c) ("written recommendations on … other matters as the administrator thinks advisable.").

## D. Superintendent Sebert is Entitled to Qualified Immunity.

Qualified immunity is an affirmative defense and once raised, the burden shifts to the plaintiff to defeat it.[11] To defeat a defense of qualified immunity, a plaintiff must show: (1) the facts show "a violation of a constitutional right;" and (2) the "constitutional right was clearly established at the time of the alleged violation."[12] Plaintiff has not met Plaintiff's burden in showing these two elements, and thus, Dr. Sebert is entitled to qualified immunity.[13]

First, Plaintiff argues Dr. Sebert violated her First Amendment rights by "playing an integral role in her termination," "publicly reprimanding [her]," "directing" the investigation into Plaintiff's misconduct, and "recommending that the Board terminate [her] employment." [Dkt. #12, p. 26]. However, as discussed in Section II.B., Plaintiff proffers no facts indicating Dr. Sebert participated personally in the alleged deprivations forming the basis of Plaintiff's claims. Additionally, these actions do not rise to the requisite level of deliberate or reckless disregard. Nor does Plaintiff proffer facts to establish Dr. Sebert misused his authority. In any event, Plaintiff does not properly establish a First Amendment retaliation claim. Thus, Plaintiff has not met her burden of establishing the facts alleged show a violation of a constitutional right.

Second, Plaintiff has not met her burden in showing the alleged constitutional right was clearly established at the time of the alleged violation. The Complaint is completely void of any

---

[11] *Purvis v. Oest*, 614 F.3d 713, 717 (7th Cir. 2010).
[12] *Gill v. City of Milwaukee*, 850 F.3d 335, 340 (7th Cir. 2017).
[13] On a related note, Plaintiff contends if Dr. Sebert were sued in his official capacity, he would assume the identity of the District, which is not immune from damages under § 1983. [Dkt. #12, p. 24, n.2]. Plaintiff proves Defendants' point – to maintain a § 1983 claim against someone in their official capacity is to in essence maintain a claim against the government itself. *Holmes v. Sheahan*, 930 F.2d 1196, 1199 (7th Cir. 1991). Thus, any monetary damages would be sought from the government's pocket rather than the individual's.

12

such allegation. [Dkt. #1]. Because Plaintiff failed to allege any constitutional right was clearly established at the time of the alleged violation in the Complaint, Plaintiff cannot do so now.[14]

Even if Plaintiff could assert this legal theory now, the right at issue has not been clearly established under the circumstances the Defendant faced.[15] The question is whether a right is clearly established "in light of the specific context of the case, not as a broad general proposition."[16] This requires the court to consider "whether the violative nature of *particular* conduct is clearly established."[17] The standard for making such an assessment is whether the existing precedent places the constitutional question or the conduct in question "beyond debate."[18] Plaintiff points to no caselaw clearly establishing a constitutional right or the violative nature of the particular conduct beyond debate. Instead, Plaintiff erroneously points to various cases for "specific instances of retaliation" that are outright inapplicable here. [Dkt. #12, pp. 28-30].[19]

---

[14] The parties are bound by the allegations set forth in the complaint and the 7th Circuit will not explore new theories of liability. *Monticello*, 102 F.3d at 903; *Craft*, 793 F.2d at 143. Indeed, the complaint must give enough detail to give fair notice of the claim. *EEOC v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007).
[15] *See Lovett v. Herbert*, 907 F.3d 986, 991-92 (7th Cir. 2018).
[16] *Id.* at 992.
[17] *Leiser v. Kloth*, 933 F.3d 696, 702 (7th Cir. 2019).
[18] *Id.*
[19] First, Plaintiff points to *Bart v. Telford*, 677 F.2d 622 (7th Cir. 1982) and falsely claims Dr. Sebert engaged in a "campaign of harassment" that "far exceeded the reprimand and ridicule the plaintiff in *Bart* faced." [Dkt. #12, p. 29]. Plaintiff makes no assertion in the Complaint Dr. Sebert engaged in a campaign of harassment and cannot do so now. In any event, the facts are distinguishable and do not support Plaintiff's argument. The plaintiff in *Bart* worked for a city, took leave to run for mayor, lost, and returned to work for the city. Upon her return, she was harassed by the mayor and other coworkers because of her public endorsement of a candidate and her running for office. The court found a public endorsement of a candidate for public office is an expression of views within the protection of the First Amendment and she was harassed because of her views in violation of same. Here, all Dr. Sebert did was engage in his ordinary course of disciplinary action in adopting the findings of an investigation, that looked into alleged misconduct and found multiple policy violations, and recommend the Plaintiff's termination as a result of such misconduct that substantially disrupted the school environment. There is no allegation in the Complaint or Plaintiff's response brief that Plaintiff publicly endorsed a candidate for public office or that she was harassed as a result of same. To claim that *Bart* is similar to the present case or that Dr. Sebert's conduct was somehow worse than the conduct in *Bart*, or even involved a campaign of harassment, is wholly inaccurate.

Plaintiff further contends it was unlawful for Dr. Sebert to "publicly reprimand" Plaintiff because of the holding in *Bart*. [*Id.*]. As discussed above, the written communication co-authored by Dr. Sebert and the Board President and sent to School District of Waukesha "Stakeholders" is not a public reprimand – it does not even name the Plaintiff. Nor does *Bart* lend any support to Plaintiff's argument. The only reprimand discussed in *Bart* is the reprimand "for endorsing a candidate at a press conference following the primary election." *Id.* at 625. As

13

In the lack of specific analogous precedent, officials may still be on notice their conduct violates established law "in novel factual circumstances."[20] If no existing precedent puts the conduct beyond debate, the court next considers if this is one of the rare cases, where the state official's alleged conduct is so egregious that it is an obvious violation of a constitutional right.[21]

Plaintiff incorrectly argues this is a case where a general constitutional rule ("that a government official may not retaliate against a public employee because the employee engaged in constitutionally protected speech") clearly proscribes Dr. Sebert's conduct. [Dkt. #12, p. 28].

---

discussed above, *Bart* is inapplicable here. Thus, again, to claim *Bart* is similar here or that Dr. Sebert's conduct involved a public reprimand is wholly inaccurate.

Plaintiff next points to *Hobgood v. Ill. Gaming Bd*., 731 F.3d 635 (7th Cir. 2013) for the proposition it was clearly established Dr. Sebert could not direct the Assistant Superintendent of Human Resources to conduct an investigation into Plaintiff's misconduct. [*Id.*]. However, as discussed above, Dr. Sebert acted reasonably and in line with his authority. Furthermore, *Hobgood* is inapplicable here. *Hobgood* involves a plaintiff who was the subject of "repeated and intensive investigation that resulted in disciplinary proceedings and termination" because the plaintiff had helped a coworker with a separate lawsuit against their employer involving claims of public corruption. *Id.* at 635. Here, Plaintiff did not help any coworker with any separate lawsuit against the District involving any claims of public corruption. Rather, Plaintiff's misconduct in repeatedly and deliberately usurping the District's chain of command, failing to raise her concerns through the appropriate channels, and instead raising them in a public manner "intended to bring as much attention to the District's decision as possible" was the subject of the investigation and was found to violate multiple District policies and cause a substantial disruption to the school environment – so much so that the negative impact it had simply could not be tolerated. [Dkt. #1, ¶¶ 59, 60]. Plaintiff's misconduct resulted in myriad threats to the school community, a school community frightened for its safety, and an increased police and security presence on school grounds. [Dkt. #8.1]. Thus, *Hobgood* is inapplicable to the present case and it was lawful for Dr. Sebert to direct the Assistant Superintendent of Human Resources to conduct an investigation into Plaintiff's misconduct.

Plaintiff finally points to *Taylor v. Ways*, 999 F.3d 478 (7th Cir. 2021) for the proposition it was clearly established supervisors cannot recommend an employee's termination because they engaged in constitutionally protected speech. [Dkt. #12, p. 30]. As discussed above, the explicit language of the Complaint makes clear Plaintiff was recommended for termination because of Plaintiff's misconduct in repeatedly and deliberately usurping the District's chain of command, failing to raise her concerns through the appropriate channels, and instead raising them in a public manner "intended to bring as much attention to the District's decision as possible" that was found to violate multiple District policies and cause a substantial disruption to the school environment – so much so that the negative impact it had simply could not be tolerated. [Dkt. #1, ¶¶ 59-61]. Again, Plaintiff's misconduct resulted in myriad threats to the school community, a school community frightened for its safety, and an increased police and security presence on school grounds. [Dkt. #8.1]. Such present situation is entirely distinguishable from *Taylor*, which involved a supervisor recommending an employee's termination because of the employee's race. *Id.* at 492. Thus, *Taylor* is inapplicable here and it was lawful for Dr. Sebert to recommend Plaintiff's termination as a result of her misconduct.

To the extent Plaintiff contends "Dr. Sebert's integral role in Ms. Tempel's termination … implicates him in Ms. Tempel's termination," Plaintiff specifically admits Dr. Sebert did not take the alleged adverse termination action and he in no way could have ("The Board fired Ms. Tempel." [Dkt. #12, p. 30; Dkt. #1, ¶ 79]). "The Board has final policymaking authority with respect to the District." [Dkt. #1, ¶ 80].

[20] *Leiser*, 933 F.3d at 702.
[21] *Abbott v. Sangamon County*, 705 F.3d 706, 723-24 (7th Cir. 2013).

14

Plaintiff cites *Kristofek*[22] for this idea, which does not apply here. The general constitutional rule in *Kristofek* involved an employee terminated because of the employee's speech which consisted of political corruption among police department officials. Here, Plaintiff does not allege her speech involved political corruption. All Plaintiff alleges is a government official may not retaliate against a public employee engaged in constitutionally protected speech. This is similar to the general proposition, "an unreasonable search or seizure violates the Fourth Amendment," which is "of little help in determining whether the violative nature of particular conduct is clearly established".[23] Thus, Plaintiff does not allege a clearly established constitutional rule.

Nor is Dr. Sebert's behavior "so egregious" as to constitute an obvious violation of a constitutional right. As discussed above, Dr. Sebert acted reasonably, in line with his authority, and his conduct did not rise to even a "deliberate or reckless disregard" level. Thus, Dr. Sebert's actions certainly cannot be said to be "so egregious."

For all the reasons discussed above, Plaintiff has not met her burden in showing the alleged constitutional right was clearly established or that there even was a violation of a constitutional right. Accordingly, Dr. Sebert is entitled to qualified immunity and the allegations with regard to Dr. Sebert in his individual capacity cannot survive a motion to dismiss.

## CONCLUSION

As set forth above, Plaintiff's Complaint fails to state a claim upon which relief may be granted. As such, her Complaint must be dismissed in its entirety as to both the District and as to Dr. Sebert.

---

[22] *Kristofek*, 832 F.3d at 785.
[23] *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011).

15

Case 2:23-cv-01169-NJ   Filed 12/01/23   Page 16 of 17   Document 13

Dated this 1ˢᵗ day of December, 2023.

          Respectfully Submitted,

          BUELOW VETTER BUIKEMA OLSON
          & VLIET, LLC

          */s/ Joel S. Aziere*
          Joel S. Aziere (WI Bar No. 1030823)
          jaziere@buelowvetter.com
          Christina A. Katt (WI Bar No. 1073979)
          ckatt@buelowvetter.com

          Buelow Vetter Buikema Olson & Vliet, LLC
          20855 Watertown Road, Suite 200
          Waukesha, Wisconsin 53186
          Telephone: (262) 364-0250
          Facsimile: (262) 364-0270

          *Attorneys for Defendants, School District of Waukesha and James Sebert*